UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEVEN C. CLARK, *Plaintiff*, | ) ) ) ) ) | 3:17-cv-1691 (KAD) |
| v. | ) ) ) ) | |
| NANCY A. BERRYHILL, *Acting Commissioner of Social Security*, *Defendant*. | ) ) ) | April 3, 2019 |

**MEMORANDUM OF DECISION RE:
PLAINTIFF'S MOTION TO REVERSE (ECF No. 17)
AND DEFENDANT'S MOTION TO AFFIRM (ECF No. 18)**

Kari A. Dooley, United States District Judge

**Preliminary Statement**

Plaintiff Steven C. Clark, proceeding *pro se*,[1] brings this appeal pursuant to 42 U.S.C. §405(g). He appeals the Defendant Commissioner's decision denying him Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act") based upon a finding that he is not "disabled" under the Act. He seeks an order from this Court reversing the Commissioner's decision. (ECF No. 17.) The Commissioner, on the other hand, asks this Court to affirm the decision. (ECF No. 18.) For the reasons set forth below, the Plaintiff's motion is **DENIED**. The Defendant Commissioner's motion is **GRANTED**.

---

[1] The Court is mindful that "'[w]hen the plaintiff proceeds *pro se*, as in this case, a court is obliged to construe [his] pleadings liberally' and interpret them as raising the strongest arguments they suggest." *Wellington v. Astrue*, No. 12-CV-3523 (KBF), 2013 WL 1944472, at *2 (S.D.N.Y. May 9, 2013) (quoting *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004)).

**Standard of Review**

The Plaintiff sought a determination that he was disabled as of March 18, 2013, the purported date of onset, through the date of the hearing. A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). In addition, a claimant must establish that his "physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [hi] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy .... " 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to which an ALJ must adhere when evaluating disability claims. *See* 20 C.F.R. 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if such a "severe impairment" is established, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity (hereinafter "RFC") to perform his or her past work; and (5) if the claimant is unable to perform

his or her past work, the Commissioner must next determine whether there is other work in the national economy which the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The claimant bears the burden of proof with respect to steps one through four. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). The Commissioner bears the burden as to step five, that is, finding the existence of work in the national economy that the claimant can perform. *See McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

The fourth sentence of Section 405(g) of the Act provides that a "[c]ourt shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner..., with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). It is well-settled that the district court will reverse an ALJ's decision only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater,* 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The Court does not inquire as to whether the record might also support the Plaintiff's claims, but only whether there is substantial evidence to support the Commissioner's decision. *See Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) ("If there is substantial evidence to support the [agency's] determination, it must be upheld").

**The ALJ's Decision**

At step one, although there was some evidence in the record that the Plaintiff had worked after the onset date, the ALJ gave him the benefit of the doubt and determined that any work

3

activity did not rise to the level of substantial gainful activity after March 18, 2013. At step two, the ALJ found that the Plaintiff had severe impairments, specifically, osteoarthritis and allied disorders, knee pain/arthritis, and disorder of muscle, ligament, and fascia. At step three, the ALJ found that the Plaintiff did not establish an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, the ALJ determined that the Plaintiff did not meet listing 1.02, which addresses major joint dysfunction, in that the Plaintiff did not establish that he is unable to ambulate effectively or unable to perform fine and gross movements effectively. At step four, the ALJ determined that the Plaintiff had an RFC "to perform light work," as defined in 20 C.F.R. 404.967(b), "except sit and stand at his job at his leisure, .… [and] the individual should never climb ramps and stairs, never climb ropes, ladders, and scaffolds, only occasionally balance, never stoop, crouch, kneel or crawl, only occasionally handle and finger bilaterally, … only occasionally use his hands to grab or use his fingers to do fine manipulation." In view of these findings, the ALJ determined that the Plaintiff was "unable to perform any past relevant work." At step five, the ALJ, crediting the testimony of the vocational expert, determined that there are a significant number of jobs in the national economy that the Plaintiff could perform. The ALJ therefore concluded that the Plaintiff was not disabled on March 18, 2013, or at any time thereafter, through the date of the hearing.

This appeal followed. The Plaintiff asserts that he met his burden at each stage of the sequential analysis and identifies those parts of the record which support his disability claim. At its core, the Plaintiff's argument is a factual disagreement with the ALJ's findings and determination that the Plaintiff is not disabled. As such, the Court construes his claim as one

challenging the existence of substantial evidence in the record to support the Commissioner's findings, and the Court examines the ALJ decision under the standards set forth above.

**Discussion**

Because, at step one, the ALJ gave the Plaintiff the benefit of the doubt and determined that he had not been engaged in substantial gainful activity after the onset date, the Plaintiff's argument on this issue need not be addressed.

At step two, the ALJ found that the Plaintiff had several severe impairments, to include osteoarthritis and related disorders, knee pain/arthritis, disorder of muscle, ligament and fascia. The Plaintiff asserts, however, that he also suffers from dyspnea. The Plaintiff had an episode of dyspnea, or shortness of breath, with chest pain in June 2011, almost two years before the onset date. He was treated in the emergency room at UConn Health Center. The records reflect that his chest examination was normal; his respiration was normal; and he had normal strength and range of motion in his extremities. A CT scan of the chest also revealed normal results. The Plaintiff was discharged with a diagnosis of dyspnea nonspecific and chest pain. No underlying condition was revealed, and he was provided no additional treatment recommendations other than to follow up with his primary care physician if the symptoms returned. The ALJ's determination not to include dyspnea as an impairment, let alone a severe impairment, is therefore supported by substantial evidence.

At step three, the ALJ determined that the Plaintiff's impairments did not meet the 1.02 listing criteria for major joint dysfunction insofar as the Plaintiff failed to establish that he is unable to ambulate effectively. The Plaintiff asserts that he has osteoarthritis in his knees; that he saw Dr. Collins for "not being able to walk properly"; and that Dr. Collins prescribed a cane. The Plaintiff

simply disagrees with the ALJ as to the import of the medical records. A review of the record reveals substantial evidence for the ALJ's determination.

In May 2013, the Plaintiff was evaluated by Dr. Patrick Carroll, a consulting physician. Dr. Carroll's examination records reveal that the Plaintiff had a normal range of motion of the hips and ankles, normal stability of both knees, 5/5 motor strength of all muscle groups, and no difficulty with his gait. He could walk on both heels and toes. Dr. Carroll noted that the Plaintiff "walks into the exam room without any difficulty. He can get on and off the exam table, up and out of chair."

When assessed in September 2013, following a complaint of foot pain, the Plaintiff was again able to walk without issue. In December 2013, the Plaintiff complained of left knee pain, but his legs were assessed as stable and as having a full range of motion. At that time, the Plaintiff refused an intraarticular injection and was recommended for OTC pain medication. His next assessment was six months later, following a complaint of neck pain. However, the physical examination was normal in all respects. In addition, Dr. Lorenzo, a DSS reviewing doctor, having reviewed the Plaintiff's medical records, concurred with the findings of Dr. Carroll. There are no subsequent medical records that reflect an inability or significant impairment to the Plaintiff's ability to ambulate effectively.

As to step four, the Plaintiff also challenges the RFC to the extent it concludes that he is able to perform light work, with or without the limitations included. He relies upon the opinion of Dr. Russo, the entire record, and his belief that he "has demonstrated in the record on more than one occasion, [that his] various medical condition[s] interfere with his ability to sustain substantial gainful employment." Again, the Plaintiff simply disagrees with the ALJ's assessment of the record. As noted above, the question is not whether a contrary conclusion might have been reached,

but whether the decision reached is supported by substantial evidence. *See Selian*, 708 F.3d at 417 ("If there is substantial evidence to support the [agency's] determination, it must be upheld"); *Talavera*, 697 F.3d at 151 (limiting review to "determining whether the SSA's conclusions were supported by substantial evidence"); *Bonet ex rel. T.B. v. Colvin,* 523 F. App'x 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting [the Plaintiff's] view is not the question here; we must decide whether substantial evidence supports *the ALJ's decision*") (emphasis in original); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence.") (quoting *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). The Court concludes that the ALJ's RFC is supported by substantial evidence.

First, the ALJ gave no weight to Dr. Russo's opinion. She is not an "acceptable medical source"; there were no treatment notes provided; she did not indicate the length of time she had been seeing the Plaintiff or the treatment recommendations she made; her opinion did not include any rationale for her conclusion; and her opinion was conclusory. The ALJ properly considered the opinion as directed under the regulations and rejected it. *See Matta v. Astrue,* 508 F. App'x 53, 56 (2d Cir. 2013) (holding that the ALJ's decision need not directly correspond with any of the opinions of medical sources relied upon and the ALJ is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole); *Richardson v. Perales,* 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). To the extent Dr. Russo opined that the Plaintiff is unable to work, the ALJ was tasked with considering that opinion as one piece of the whole record and evaluating that statement against that record.

7

In addition, the ALJ did not credit the Plaintiff's testimony in terms of the persistence, intensity, and limiting effects of his impairments.[2] The evaluation of a claimant's subjective complaints is within the sole province of the ALJ as the trier of fact. *See Barbuto v. Colvin,* 2014 WL 3572412 at *5 (W.D.N.Y. July 21, 2014). The ALJ is not required to accept the Plaintiff's "subjective complaints without question; he may exercise discretion in weighing the credibility of the [Plaintiff's] testimony in light of the other evidence of record." *Genier*, 606 F.3d at 49. The ALJ's determination is entitled to "great deference and therefore can be reversed only if [it is] patently unreasonable." *Piertrunti v. Dir., Office of Workers' Comp. Programs,* 119 F.3d 1035, 1042 (2d Cir. 1997); *see also Selian,* 708 F.3d at 420. The ALJ should consider whether the claimant's testimony is consistent with the medical records submitted. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Indeed, claimants are advised that "[o]bjective medical evidence is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work." *Id*.

The ALJ found the record to be replete with evidence that the Plaintiff was more physically active than the extent to which he testified. For example, in September 2013, six months after the purported onset date, the Plaintiff was treated for pain in his left foot when he "twisted it playing basketball." In June 2014, the Plaintiff was seen at Windham Hospital for neck pain which occurred suddenly "after lifting a heavy beam." In January 2015, the Plaintiff complained of lower back pain after shoveling snow. In May 2015, he reported to his physical therapist that he was working as a landscaper and that his back "has been doing pretty good."

---

[2] The ALJ did conclude that the Plaintiff's impairments could reasonably be expected to produce the claimant's pain or other symptoms.

The record also revealed that the Plaintiff could undertake essentially all activities of daily living. The ALJ properly determined that the Plaintiff can take care of his children; goes food shopping; and is able to pay his bills, count change, handle a savings account, and use a checkbook/money order. The Plaintiff can vacuum, do laundry, and perform general household chores. Indeed, the Plaintiff told Dr. Carroll that he can mop, vacuum, cook, do dishes, and shop. These findings not only undermine the Plaintiff's credibility, they also provide substantial evidence to support the RFC determination.

Lastly, the ALJ observed that the Plaintiff's earnings history does not comport with his work background history, and that there was no way to determine the Plaintiff's true earnings for the past 15 years. The Plaintiff's failure to report his earnings further diminished his credibility.

The ALJ also went through a painstaking review and assessment of the medical records and the opinions of reviewing and consulting medical personnel, and provided the reasons he accepted, accepted in part, or rejected those opinions. In so doing, the ALJ gave the Plaintiff the "benefit of the doubt" and accounted for the degenerative nature of the Plaintiff's impairments by inserting additional restrictions into the RFC. *See Matta*, 508 F. App'x at 56; *Richardson*, 402 U.S. at 399. In the final analysis, the ALJ must balance and weigh conflicting evidence. *See Cage v. Comm'r of Soc. Sec.,* 692 F.3d 118, 122 (2d Cir. 2012) (deferring to the Commissioner's resolution of conflicting evidence). Considering the ALJ decision against the entire record, there is no question that the RFC is supported by substantial evidence.

Finally, as to step five, the Plaintiff merely reiterates his position that he is not able to engage in any work, to include "light work," as found by the ALJ. To the extent this argument is an additional objection to the RFC, the argument is addressed above. However, the Plaintiff next avers that the "state vocational expert testified at the hearing that the Plaintiff is 'unemployable.'"

He misconstrues the record. The ALJ asked the vocational expert ("VE") a series of hypotheticals, each describing someone of the Plaintiff's age, education, and past work history. The hypotheticals became increasingly restrictive in terms of the person's limitations and abilities. The fourth hypothetical matched the ALJ's ultimate decision regarding the Plaintiff's RFC. The VE testified that there are a significant number of jobs in the national economy that the hypothetical person could perform. He identified three examples and the frequency with which they are present in both the nation and Connecticut.

On cross-examination, the Plaintiff posited hypotheticals as well. The Plaintiff's hypotheticals assumed limitations and circumstances such as the person does not show up for work due to his medical condition; the person leaves work unexpectedly for the same reason; or the person must lie down suddenly at work. The VE converted the Plaintiff's questions into a more answerable format, *i.e.,* if the person was absent more than two times per month, or if the person was found lying down on the job, or the person was off-task greater than 15% of the time. Accepting the Plaintiff's hypothetical, the VE agreed that the person was unemployable.

The ALJ's hypothetical was consistent with his findings regarding the Plaintiff's limitations and RFC. As noted above, these findings are supported by substantial evidence. The Plaintiff's hypotheticals are not consistent with the ALJ's findings. As such, the VE's testimony that such a person would be unemployable is of no moment. The ALJ's determination at step five is therefore supported by substantial evidence.

For all the foregoing reasons, the Plaintiff's motion to reverse is **DENIED**. The Defendant's motion to affirm is **GRANTED**.

Judgment shall enter in favor of the Defendant.

The Clerk of the Clerk is directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of April 2019.

        */s/ Kari A. Dooley*
        KARI A. DOOLEY
        UNITED STATES DISTRICT JUDGE